**Patrick C. MATTETE, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 04–CM–409.**

District of Columbia Court of Appeals.

Argued May 12, 2005.
Decided June 29, 2006.

Bernard A. Solnik, Washington, DC, appointed by the court, for appellant.

Edith Shine, for appellee.

Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the brief was filed, Thomas J. Tourish, Jr., Richard S. Basile, and L. Jackson Thomas II, Assistant United States Attorneys, were on the brief for appellee.

Before WASHINGTON, Chief Judge, REID, Associate Judge and SCHWELB, Senior Judge.[*]

WASHINGTON, Chief Judge:

After a bench trial, appellant Patrick C. Mattete ("Mattete") was found guilty of misdemeanor sexual abuse [1] and simple as-

---

[*] Judge Washington was an Associate Judge of the court at the time of argument. His status changed to Chief Judge on August 6, 2005. Judge Schwelb was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on June 24, 2006.

[1] In violation of D.C.Code § 22–3006 (2001).

sault.[2] The trial court acquitted Mattete of attempted threats.[3] On appeal, Mattete contends: (1) the evidence was insufficient to support his convictions; (2) a detective's testimony at trial exceeded the permissible scope of the report-of-rape rule; (3) the trial court erred in erroneously attributing testimony to Mattete; and (4) his conviction for simple assault merges into his conviction for misdemeanor sexual abuse. We agree with Mattete that his conviction for simple assault merges into his conviction for misdemeanor sexual abuse, and remand his case to the trial court solely for the purpose of vacating his assault conviction. As to all other claims, we affirm.

## ANALYSIS

### A. Sufficiency of the Evidence

 When reviewing a claim of insufficiency of the evidence, "[w]e view the evidence in the light most favorable to the government, recognizing the province of the trier of fact to weigh the evidence, determine the credibility of the witnesses and to draw reasonable inferences from the testimony." *Dickerson v. United States,* 650 A.2d 680, 683 (D.C.1994); *see also Gibson v. United States,* 792 A.2d 1059, 1065 (D.C.2002). The government "must present 'at least some probative evidence on each of the essential elements of the crime.'" *Price v. United States,* 746 A.2d 896, 899 (D.C.2000) (quoting *Robinson v. United States,* 506 A.2d 572, 573 (D.C.1986)). Furthermore, in reviewing bench trials, "this court will not reverse unless an appellant has established that the trial court's factual findings are plainly

wrong or without evidence to support [them]." *Mihas v. United States,* 618 A.2d 197, 200 (D.C.1992) (internal quotation marks and citation omitted); D.C.Code § 17–305(a) (2001).

 To support a conviction for misdemeanor sexual abuse, the government must prove beyond a reasonable doubt "(1) that the defendant committed a 'sexual act' or 'sexual contact' as defined in D.C.Code § 22–4101;[4] and (2) that the defendant knew or should have known that he or she did not have the complainant's permission to engage in the sexual act or sexual contact." *Mungo v. United States,* 772 A.2d 240, 244–45 (D.C.2001).

Mattete argues on appeal that the evidence was insufficient to convict him of misdemeanor sexual abuse because there was no evidence that Mattete touched the complainant's inner thigh, as required by D.C.Code § 22–3001(9). He contends that "[t]he only part of the body that [the complainant] testified to being touched by Mr. Mattete was her leg and thigh outside of her clothing." Accordingly, he argues, the government failed to prove the elements for this conviction beyond a reasonable doubt.

The record reflects that the complainant testified at trial and, on more than one occasion, demonstrated for the court how Mattete touched her on her thigh. During one demonstration, the court articulated what the complainant had described: "And the way she demonstrated, that his hands came from, she had her hand coming from the knee up her thigh.... So the way she

2. In violation of D.C.Code § 22–404 (2001).

3. In violation of D.C.Code § 22–407 (2001).

4. This section was recodified in D.C.Code § 22–3001(9) (2001). The statute defines "sexual contact" as "the touching with any

clothed or unclothed body part of any object, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

demonstrated came all the way up her thigh."

During the complainant's cross-examination, the trial court again asked the complainant:

Q: In describing the rubbing that took place on the couch, I think ... you said it went all the way up and you demonstrated it all the way up to the top of your thighs, right?

A: Yes, Your Honor.

■ The complainant also testified that the appellant continuously rubbed her legs and attempted to undress her by grasping at the clasp on the side of her skirt. Mattete neither objected to the complainant's demonstration nor argued at any point in the trial that the complainant's demonstration was insufficient.[5] In order for us to reverse, we would have to presume that the complainant's demonstrations failed to reflect the touching of the inner thigh and that the prosecutor, defense counsel, and trial court were all unaware of the requirement under D.C.Code § 22–3001(9). Because the trial court's judgment comes before us with a presumption of correctness, and there is no evidence that the parties and the court were unaware of the requirement that there be a touching of the inner thigh when the complainant made her in-court demonstration, we are satisfied that the evidence, viewed in the light most favorable to the government, was sufficient to sustain Mattete's conviction.[6] *See Bell v. United States,* 806 A.2d 228, 232 (D.C.

2002) (quoting *Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982)).[7]

We note that, to some extent, this case is similar to our decision in *Carter v. United States,* 826 A.2d 300 (D.C.2003). In *Carter,* we upheld the appellant's conviction for misdemeanor sexual touching of the complainant's inner thigh. Although the complainant never testified that the appellant touched her *inner* thigh, we found the evidence sufficient to support Carter's conviction. Specifically, we found that the complainant's testimony that Carter was attempting to push his hand through her clenched legs toward her vagina was sufficient to show that there was touching of the inner thigh. Despite the fact that there was no affirmative acknowledgment by the trial court that a touching of the inner thigh was a necessary element of the crime, we nonetheless concluded that there was "no appreciable possibility" that the trial judge, who held the book containing the misdemeanor statute in her hand, failed to read the statute. *Carter,* 826 A.2d at 309. Although not factually identical to this case, *Carter* does support the contention that trial court judgments, which come to us with a presumption of correctness, should be upheld when there is no indication in the record that the trial court was unaware of the law's requirements.

### B. Report–of–Rape Rule

Mattete argues that the trial court abused its discretion in allowing Detective

5. Our dissenting colleague infers from this testimony that Mattete only touched the complainant's outer thigh area as he reached for the clasp. While that testimony explicitly established that the appellant touched the complainant's outer thigh, it also raised a reasonable inference that he also touched the inner thigh, especially given the complainant's testimony that appellant was rubbing all the way up her leg. *Dissent,* note 2.

6. Unfortunately, this case was made significantly more difficult to review because the prosecutor failed to describe the demonstration fully for the record and the trial court did not insist that the prosecution do so.

7. We need not address whether the evidence was sufficient to support Mattete's conviction for simple assault because, as we address below, that conviction merges with his conviction for misdemeanor sexual assault and will be vacated on remand.

Andrews, a witness for the government, to testify beyond the scope of admissible testimony under the report-of-rape rule. Mattete argues that "Detective Andrews should [ ] only have been permitted to testify as to what touching Mr. Mattete allegedly did in the apartment, and what threat he allegedly made in the apartment," as opposed to the events occurring before and after the incident. Mattete contends that, in addition to the Detective's testimony exceeding the scope, the government and the trial court improperly used the testimony to corroborate the complainant's testimony.

■ Under the report-of-rape rule, "a witness may testify that the complainant stated that a sexual crime occurred and may relate the detail necessary to identify the crime." *Galindo v. United States*, 630 A.2d 202, 209 (D.C.1993). "Under the report-of-rape rule, testimony that the complainant reported that she was the victim of a sexual assault was admissible 'not for the truth of the matter asserted, but merely for the fact that the statement was made.'" *Battle v. United States*, 630 A.2d 211, 216–17 (D.C.1993) (quoting *Fitzgerald v. United States*, 443 A.2d 1295, 1304 (D.C. 1982) (en banc)).

■ In this case, even assuming the trial court erred in allowing Detective Andrews to testify beyond the scope of the report-of-rape rule, we are satisfied that

the error was harmless. On appeal, Mattete does not challenge Detective Andrews' testimony about the incidents which occurred at Mattete's house. Rather, Mattete complains that Detective Andrews should not have been allowed to testify as to why Mattete picked the complainant up and why the two went to his house, as well as to the events which occurred after the alleged sexual abuse. Even assuming this was error, however, Mattete has failed to show how the "extraneous" testimony prejudiced him. *See Galindo*, 630 A.2d at 209. The complainant's testimony was sufficient to convict Mattete, and the trial court credited and properly relied on this testimony. *See id.* Finally, Mattete's argument that the trial court improperly relied on Detective Andrews' testimony to "corroborate" the complainant is without merit. *See Williams v. United States*, 756 A.2d 380, 386 n. 6 (D.C.2000) (stating that "use of the term 'corroborate' does not imply that the content of [complainant's] statements [ ] was admissible for its truth," but simply implies that the complainant's disclosure tends to support the complainant's testimony regarding the defendant's crimes).[8]

### C. Merger

Finally, we agree with both Mattete and the government that Mattete's conviction for simple assault merges into his conviction for misdemeanor sexual abuse. *See*

---

8. We are also unpersuaded by Mattete's arguments that he was prejudiced by the trial court's improper attribution of testimony to him regarding why he invited the complainant to his house. He also states that the Detective's testimony on this issue, which he claims went beyond the scope of the report-of-rape rule, "poison[ed] the Judge's general assessment of the parties' credibility." Although it appears that the trial court made an erroneous factual finding when it stated that Mattete asked the complainant to his home to meet his sister, this finding was not, as Mat-

tete argues, the key factor in the trial court's decision, but one of numerous findings upon which the trial court relied on in making its final judgment. Because the trial court relied, *inter alia*, on the demeanor and believability of the complainant, the unbelievability of Mattete's testimony, and their past encounters with each other, we are satisfied that no prejudice flowed from the trial court's erroneous recollection of Mattete's testimony on the issue of why the two of them went to Mattete's house.

*Mungo,* 772 A.2d at 246. Accordingly, we remand Mattete's case to the trial court solely for the purpose of vacating his conviction for simple assault.

As to all other claims, the judgment of the trial court is

*Affirmed.*

SCHWELB, Senior Judge, dissenting in part:

I regret that I am unable to join the opinion of the court. In my view, however, the evidence in this case was insufficient, as a matter of law, to prove beyond a reasonable doubt that Mattete touched the *inner* thigh (as distinguished from the thigh) of the complainant, N.M. I reach this conclusion because N.M.'s testimony strongly suggests, and arguably even establishes, that Mattete touched her *outer* thigh, but not her *inner* thigh. Moreover, the record reveals that nobody—not the prosecutor, not the defense attorney, not the judge, and no witness—ever referred to the *inner* thigh at all. On the contrary, the case was tried as if it was sufficient for the government to prove that Mattete touched any part of N.M.'s thigh. Thus, one who reads the transcript knows that, according to N.M., Mattete touched her thigh, and probably her outer thigh, but the reader can find no testimony or suggestion that Mattete touched her *inner* thigh.

The misdemeanor sexual abuse statute defines "sexual contact" as including, *inter alia,* "the touching ... of the ... *inner* thigh ... of any person" with the prohibit-

ed sexually abusive intent. *See* D.C.Code § 22–3001(9) (2001). Because the prosecution did not prove a proscribed touching, I would affirm Mattete's conviction of simple assault [1] but reverse his conviction of misdemeanor sexual abuse.

## I.

In my opinion, the government's theory—first articulated in its brief on appeal—that Mattete touched N.M.'s inner thigh is demonstrably contrary to the evidence at trial. Not only is there no proof that Mattete touched the complainant's inner thigh, there is persuasive and arguably compelling evidence that, at least while engaging in the conduct described by N.M., he did not touch it at all.

Repeatedly, N.M. testified that Mattete moved his hand from her knee up her thigh, attempting to pull her skirt. Specifically, according to the complainant, Mattete was "trying to pull my skirt" by what the trial judge described as "that little clasp or whatever." The clasp, N.M. stated, was located "[o]n the side." Therefore, as N.M. explicitly explained in response to the judge's inquiry, Mattete was "rubbing on my leg" and "trying to pull my skirt ... *from the side.*" As a matter of simple anatomy, the route from the knee to a clasp located "on the side" travels up the thigh and eventually up the outer thigh until the ultimate destination, *i.e.,* the side, has been reached. This scenario presents a striking contrast to *Carter v. United States,* 826 A.2d 300 (D.C.2003), in which

---

1. I have no difficulty in voting to affirm Mattete's conviction of simple assault. First, Mattete's argument regarding this conviction consists of just over six lines in his brief, without citation of authority. Accordingly, Mattete has at least arguably waived the point. *See Bardoff v. United States,* 628 A.2d 86, 90 n. 8 (D.C.1993). Assuming, *arguendo,* that the claim has been preserved, "the pro-

scribed act—the *actus reus*—of non-violent sexual touching assault can be less intimate than the behavior forbidden in the sexual abuse offense." *Mungo v. United States,* 772 A.2d 240, 246 (D.C.2001). Viewing the record, as we must, in the light most favorable to the prosecution, the evidence was sufficient to satisfy each element of non-violent sexual touching assault, as set forth in *Mungo.*

the defendant was attempting to push his hand through the complainant's clenched legs towards her vagina—a route which necessarily passed along the inner thigh.

It is true that at trial, N.M. made an "in-court" demonstration of Mattete's abusive actions. As the majority appropriately acknowledges, however, "this case was made significantly more difficult to review because the prosecutor failed to describe the demonstration fully for the record and the trial court did not insist that the prosecutor do so." *Ante,* maj. op., note 6. The prosecutor's failure to do what the majority correctly explains that he should have done leaves us with no information regarding whether Mattete touched N.M.'s inner thigh except for her testimony that Mattete's hand went from her knee to the clasp at the side.

Under these circumstances, I cannot agree with the government's assertion, in this court, that the prosecution proved a touching of the *inner* thigh beyond a reasonable doubt. In fact, the trial prosecutor had it right when he told the court, in closing argument, that Mattete "put his hand on her left thigh, and ran his hand up her left thigh, *toward her side.*" (Emphasis added.) The prosecutor further told the court that the defendant "began rubbing his hand on her left thigh *and grasping at the clasp on her skirt.*" (Emphasis added.) It is undisputed that the clasp was, as N.M. put it, "on the side." It is inconceivable that the prosecutor would have argued in this way if he had realized,

at the time he presented his closing argument, that it was incumbent upon the government to prove that Mattete touched N.M.'s *inner thigh.* Indeed, the prosecutor's argument tended to show the opposite—that Mattete touched N.M.'s *outer* thigh.

As the majority correctly points out, *ante* p. 115, we must "view the evidence in the light most favorable to the government, recognizing the province of the trier of fact to weigh the evidence, determine the credibility of the witnesses and to draw reasonable inferences from the testimony." (Citations omitted.) This principle has little if any bearing on this case, however, for in concluding that reversal is required, I am accepting as true every word that N.M. uttered. In fact, it is N.M.'s testimony that establishes the failure of the government to prove with "near certitude," *Rivas v. United States,* 783 A.2d 125, 133 (D.C. 2001) (en banc) (quoting *Jackson v. Virginia,* 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), that Mattete touched her inner thigh.[2]

## II.

The majority states, and I agree, that "the trial court's judgment comes before us with a presumption of correctness." *See, e.g., Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982). The majority goes on to state, however—and with this I do not agree—that

[b]ecause the trial court's judgment comes before us with a presumption of

---

2. The majority responds as follows to N.M.'s testimony that Mattete's hand moved from her knee to the clasp at the side:

While that testimony explicitly established that the appellant touched the complainant's outer thigh, it also raised a reasonable inference that he also touched the inner thigh, especially given the complainant's testimony that appellant was rubbing all the way up her leg.

But the inner thigh was not mentioned, and I respectfully disagree with the majority's view that silence on the subject rendered the inference reasonable. Although it is *possible* that at some point not described in the testimony, Mattete touched N.M.'s inner thigh as well as her outer thigh, this is a very far cry indeed from proof beyond a reasonable doubt.

correctness, *and there is no evidence that the parties and the court were unaware of the requirement that there be a touching of the inner thigh* when the complainant made her in-court demonstration, we are satisfied that the evidence, viewed in the light most favorable to the government, was sufficient to sustain Mattete's conviction.

*Ante,* maj. op. p. 116 (emphasis added). In my opinion, the evidence is overwhelming that the parties were unaware—or, at the very least, failed completely to focus upon—the requirement in the statute that the defendant must be shown to have touched the victim's *inner* thigh.

As I have noted, the prosecutor could hardly have made the closing argument that he did—"r[u]n his hand up her left thigh, *toward her side*"—if the "inner thigh" provision had even crossed his mind. During the trial, the prosecutor used the term "thigh," without "inner," at least seven times, and he never mentioned the *inner* thigh at all. But the prosecutor was not alone. The trial judge used the term "thigh" at least four times and the term "leg" at least ten times, but likewise never made a single reference to an *inner* thigh throughout the entire proceeding. The defense attorney never used the term either. If the court and counsel had been aware of, and had focused upon, the *inner* thigh requirement, then it is surely inconceivable that the statutory term would not have appeared in the transcript even once, especially when N.M.'s description of what Mattete did pointed *away from* any notion that he touched N.M.'s inner thigh. The statistical chance that on so numerous occasions, the participants in the trial used the terms "leg" or "thigh" (when they really meant "*inner* thigh," the term used in the statute) is surely close to nil. Therefore, in my judgment, the presumption that the court (and, one would hope, the attorneys) were aware of the elements

of the offense has been persuasively rebutted, if not conclusively dismantled, by the numerous references by court and counsel alike to the "thigh" and to the "leg" without any mention at all of the "*inner* thigh."

Theoretically, the case might be remanded to the trial court for further findings, especially with respect to the path that Mattete's hand took during the in-court demonstration. *Cf. Carter,* 826 A.2d at 309–10 (concurring opinion). The trial judge, however, has retired, and, in any event, this case is quite unlike *Carter,* in which the defendant's hand necessarily touched the victim's inner thigh en route to her vagina. Under the Double Jeopardy Clause, the government only has a single opportunity to present evidence sufficient to support a guilty verdict. *Burks v. United States,* 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). Accordingly, I would reverse Mattete's conviction for misdemeanor sexual abuse and remand the case to the trial court with directions to enter a judgment of acquittal. I would affirm Mattete's conviction for simple assault.